# Exhibit A

Exhibit A



## SALESPERSON EMPLOYMENT CONTRACT

THIS AGREEMENT made and entered into this __21__ day of __Oct__, 20__22__, (the "Effective Date") by and between K. W. Brock Directories, Inc., d/b/a "Names and Numbers", (hereinafter referred to as the "Company"), and __Cydni Beck__, (hereinafter referred to as the "Employee").

**WHEREAS:**

The Company is in a highly competitive business and expends a considerable amount of time, effort, and money in the development of business from new clients and customers, and in obtaining continued business from existing clients and customers.

The Company has also developed and acquired for use certain commercially valuable information, technology, and business methods that are not generally available to or known by the public.

The continued growth and success of the Company depends on its ability to maintain its competitive edge, and not only requires the protection of its existing proprietary information and technology, but also the generation of new proprietary information, technology and business methods.

The Employee understands that the basis of the success of the Company resides in its employees, and is dependent upon the protection of its proprietary information, technology and business methods.

**NOW, THEREFORE**, in consideration of the recitals, and the agreements below, the Company agrees to [hire] [retain] Employee and Employee hereby agrees to accept such [employment] [continued employment], upon the terms and conditions and for the consideration and mutual covenants hereinafter set forth.

**1.    Duties of Employee.** Employee hereby agrees to diligently and faithfully perform all duties required as a salesperson for Company.

The Employee's duties include but are not limited to the following:

    a.    To solicit, secure, and maintain for Company local business directories and digital products advertising contracts.
    b.    To complete and forward all contracts, copy sheets with appropriate art, etc. for local business directories and digital products advertising on forms as provided by Company.
    c.    To devote best efforts exclusively in furtherance of Company's business on a full time basis, and not to represent any other company without the specific prior written permission of Company.
    d.    To provide Company with a daily and weekly report of sales activities.
    e.    To faithfully and diligently discharge all other duties assigned by Company.
    f.    To actively attend to the business needs of Company's customers within the territory assigned by Company and to attract and obtain new customers within said territory for Company. It is expressly agreed and understood that Employee shall not have authority to bind Company with respect to any such local business directory and digital products advertising contracts and that all such proposed contracts which Employee obtains for Company shall be submitted to Company for final review and approval.
    g.    To comply with and abide by the terms of this agreement, including but not limited to the terms set forth in paragraphs 7, 8, and 9 below.

**2.    Compensation.** Company hereby agrees to pay Employee during the term of employment certain compensation in accordance with Company's Sales Plan as such may be amended and/or revised from time to time at the sole discretion of Company. Employee will be paid bi-weekly in accordance with Employer's customary payroll practices.

**3.** **Compensation in the Event of Termination.** In the event Employee's employment is terminated by either Company or Employee, all compensation due to Employee through the date of termination, as provided in the Sales Plan, shall be paid within sixty (60) days following termination. It is further mutually agreed and understood that following termination and upon payment of all sums due to Employee, as herein provided, Company shall be under no further duty or obligation to pay any additional compensation to Employee.

**4.** **Term.** This Agreement shall not bind either Employee or the Company to continue the employment relationship for any set duration, salary, benefits or other conditions of employment. Both the Company and Employee may terminate the employment relationship at their discretion for any reason whatsoever or for no reason upon two weeks' notice, provided that the Company may terminate the employment relationship immediately and without prior notice for "cause."

**5.** **Employee's Expenses.** Company hereby agrees to reimburse Employee a portion of expenses reasonably and necessarily incurred by Employee in discharge of duties to Company as provided in the Sales Plan. Employee agrees to abide by all rules and regulations applicable to business expenses, as set forth in said Sales Plan, and further agrees that any and all incurred expenses charged to Company in excess of allowances set forth in the Sales Plan shall be deducted from Employee's compensation.

**6.** **Property Rights.** It is mutually agreed that all customer lists, contracts, sales aids, procedure manuals, and any and all other documents, correspondence, resolutions, memoranda, or other items, documents, files, or tangible or intangible personal property prepared or received by Employee during the term of employment hereunder shall remain the confidential and proprietary information of Company, and upon termination of employment or request by Company all such property shall be immediately delivered to Company. This shall specifically include computer, copier, fax, and other equipment provided or paid for by Company. Any materials prepared by Employee in the course of employment shall be deemed "works made for hire" under the copyright law, and the property of Company.

**7.** **Non-Disclosure of Information.** Employee may have access to trade secrets, confidential and/or proprietary information of the Company, including but not limited to all information used by or belonging to or relating to the Company or any subsidiary, parent or affiliate of the Company which is not generally known to the public or to the industry in which the Company is or may become engaged, including, without limitation, past, present or future business or trade secrets, customers or customer lists, prospects or prospect lists, price lists, cost lists, methods, policies, formulas, procedures, know-how, manuals, handbooks, instructions, techniques, business strategies, marketing or development plans, devices, records, drawings, demonstrations, samples, models, blueprints, reports, specifications, designs, technology and digital products, computer hardware and software, key employees, financial or proprietary information and all other information, knowledge or data of any kind or character relating to the products or business of the Company or any subsidiary, parent or affiliate of the Company whether or not reduced to writing, which should be treated as confidential information, and all copies and duplications thereof ("Confidential Information"), some of which the Company may have licensed or otherwise acquired from third parties. Employee agrees that upon termination of employment with the Company for any reason whatsoever, whether voluntary or involuntary, or whenever the Company shall request, he or she will promptly deliver to the Company all Confidential Information in his or her possession or under his or her control, and will not retain copies thereof. In addition, Employee agrees to treat all Confidential Information as confidential and will not during the term of employment or at any time subsequent to the termination of employment communicate or disclose to any person or entity, other than the Company, nor duplicate or use for any reason or purpose, either for the benefit of Employee or for the benefit of any person or entity, other than for the benefit of the Company, any Confidential Information. Employee further agrees to use best efforts at all times to safeguard any Confidential Information from falling into the hands of any unauthorized person or entity. These restrictions shall not apply to any information to the extent that it is:

(a) known to the public or becomes known to the public except through Employee's unauthorized disclosure;

(b) lawfully known to Employee before the first disclosure to Employee by or on behalf of the Company, as proven by clear and convincing pre-existing written records; or

(c) received by Employee in good faith from a third party not under any obligation of secrecy to the Company.

**8.** **Non-Solicitation and Non-Disturbance.** For a period commencing on the date of this Agreement, continuing for a period of 24 months following the termination of Employee's employment or association with the Company for any reason whatsoever, whether voluntary or involuntary, Employee will not, directly or indirectly, or as

an employee, officer, director, member, owner, stockholder (except for ownership in a company whose stock is actively traded on a national public exchange), agent, consultant, lender, or affiliate of such entity or otherwise:

   a. Solicit, accept, or service, or attempt to solicit, accept or service, any business similar to the type and character of business then engaged in by the Company from any person, corporation or other entity who is then or during the term of employment was a customer or independent contractor of the Company; or

   b. Induce or influence, or attempt to induce or influence, any employee, representative, consultant, or agent of the Company to leave or terminate its relationship with the Company in favor of any other corporation, individual, firm, or other entity.

**9. Covenant Not to Compete.** For a period of two years after termination of employment for any reason whatsoever, whether voluntary or involuntary, Employee hereby agrees that he or she will not, within any area covered by a local business directory (print and online) published by Company, and a radius of twenty-five (25) miles beyond such areas:

   A. Own, operate, engage in, or cause to be operated or engaged in directly, indirectly or through others any Competitive Business; or

   B. Disseminate or cause to be disseminated advertising material related to any Competitive Business; or

   C. Become interested in, directly or indirectly, as an employee partner, officer, director, stockholder, advisor, consultant, agent, independent contractor or any other form, method, or capacity, any Competitive Business; or

   D. Shall not disparage, hold in disrepute, or otherwise speak or refer in negative terms about Employer.

For purposes of this Agreement, a "Competitive Business" means any business activity which involves or relates to publication of print or online local business directories and digital products, or solicitation of advertising therein, or which otherwise competes directly or indirectly with the business activities of Company.

The Employee represents that his or her experience, age, capabilities, health and personal assets are such that this covenant will not deprive Employee from either earning livelihood in the unrestricted business activities or from otherwise adequately and appropriately supporting himself or herself.

The parties further agree that the time period of this covenant and the geographic area covered are terms and conditions which are reasonable and necessary for the protection of the business activities and valuable property rights of Company.

**10. Disclosure of Agreement.** Employee agrees to provide a copy of this Agreement any prospective future employer prior to accepting employment with any such employer.

**11. Remedies.** The Company may enforce the terms of this Agreement by instituting legal or equitable action. Employee understands and agrees that in the event of a breach or threatened breach of any provision of this Agreement, the Company may suffer irreparable damages and its remedy at law will be inadequate. Therefore, upon any such breach or threatened breach by Employee, the Company shall be entitled to injunctive relief. Moreover, if the Company prevails against Employee, in whole or in part, in any action to enforce this Agreement, whether for injunctive relief or damages or both, then in addition to whatever injunctive relief or damages may be awarded, Company shall be entitled to all costs and expenses, including reasonable attorney fees and expert witness fees, incurred in connection with any dispute hereunder, whether or not formal litigation is commenced; and Employee shall be liable for such costs and expenses. It is further agreed that in the event a court of competent jurisdiction determines that Employee has breached any obligations under paragraphs 7, 8, or 9, the expiration date of the covenants herein shall be extended by a day for each day the covenant(s) herein have been breached.

**12. Affiliates.** Employee's obligations and the rights of the Company under this Agreement shall extend to any parent corporation, subsidiaries and corporate affiliate company, and to any of their successors, assignees and transferees. Employee's rights under this Agreement are not assignable and any attempt of Employee to assign its rights under this Agreement shall be void.

**13.    Severability.** The invalidity or unenforceability of any part or subpart of this Agreement shall not affect the validity or enforceability of the remainder of the Agreement. If any provision of this Agreement shall be held to be excessively broad as to time, geography, activity or other obligations, it shall be construed or reformed, by limiting or reducing it, so as to be enforceable to the maximum extent in favor of the Company that is lawfully enforceable.

**14.    Waiver.** The waiver by Employee or the Company, or the failure of either, to claim a breach, require notice with respect thereto, of any provision of this Agreement shall not be, nor be held to be, a waiver of any subsequent breach, or as affecting in any way the effectiveness of such provision.

**15.    Entire Agreement.** This Agreement contains all understanding between the Company and Employee about the subjects covered, and cannot be changed, modified or amended in any respect except by a written document signed by both Employee and the Company.

**16.    Applicable Law.** This Agreement is deemed to be entered into in Pittsburg, Kansas and shall be construed pursuant to and governed by the laws of the State of Kansas. The parties agree that jurisdiction and venue in any action brought pursuant to this Agreement to enforce its terms shall properly lie in the District Court of Crawford County, Kansas. Such jurisdiction and venue is merely permissive; jurisdiction and venue shall also continue to lie in any court where jurisdiction and venue would otherwise be proper.

**17.    Relationship Between the Parties.** The relationship between Company and the Employee shall be that of the Company and Employee. Nothing herein contained shall be construed to give the Employee any interest in the assets of Company.

**18.    Waiver of Breach.** The waiver by any party hereto of a breach of any provision of this agreement shall not operate or be construed a waiver of any subsequent breach by any party.

**19.    Notices.** Any notice required or permitted to be given under this agreement shall be sufficient, if given in person or by certified mail, to the address of the Employee or to the principle office in the case of Company.

**IN WITNESS WHEREOF,** the parties hereto have set their hands the day and year first above written.

Company: _____    Date: 10/21/22

K.W. BROCK DIRECTORIES, INC.
dba NAMES AND NUMBERS

Employee: _____CBeek_____    Date: 10/21/2022

10/10/22

# Exhibit B

Exhibit B

**From:** Cyd Beck <cbeck@namesandnumbers.com>
**Sent:** Tuesday, July 22, 2025 4:23 PM
**To:** Todd McKnight <toddm@namesandnumbers.com>; Debbie Brock <dbrock@namesandnumbers.com>
**Subject:** Resignation

Todd,
Sorry I had to hang up Todd. I was dealing with my special-needs grandson, which brings me to why I hopped on with Arvig. He is a handful needs a lot of care, which takes money. Since his mother, my daughter passed away it's been all on me.
Let this be my letter of resignation. Unless you would like to keep me on to do digital for you?  But  just so you know, I am presenting digital for you and print for Arvig. I was being allowed to do this and not do any digital through Arvig Media. All digital went to names and numbers. If the business didn't want it, but they wanted print They were able to get
it.  But  digital was presented first. I always strived to be really good with digital, but it's just not my cup of tea.
I did wonder if this was a conflict of interest but knowing and remembering that Dan had said you all know this Isn't what you were hired for (digital) I figured I could do it this way. The businesses in Arizona I can find online and I can also get them from the Chamber or the business license department at City Hall which is what I've been doing.
Also, there was no misrepresentation of who clients thought their print or where there money was going as I explained it, and they received a contract with Arvig at the top. I would put  Names And Numbers business card on there in case they reconsidered digital. Names And Numbers doesn't do print. I don't see the big deal here.
This  actually has pushed me to consider retiring as I've been thinking about it for a while. Thank you for the 2 1/2 years. I will send all issue and the computer back when I get home as I forgot it.
Cyd Beck

Confidentiality Notice: This email message (including any attachments) is for the sole use of the intended recipient and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of the original.

# Exhibit C

Exhibit C



**From:** Todd McKnight <toddm@namesandnumbers.com>
**Sent:** Wednesday, July 23, 2025 4:30 PM
**To:** Cyd Beck <cbeck@namesandnumbers.com>
**Cc:** Todd McKnight <toddm@namesandnumbers.com>; Debbie Brock <dbrock@namesandnumbers.com>; Andrea Strand <astrand@namesandnumbers.com>
**Subject:** RE: Resignation
**Importance:** High

Cyd,

We are responding to your resignation email of yesterday, July 22nd, 2025.  Names and Numbers ("N&N") accepts your resignation.

When we learned that you have been selling print advertising for Arvig to N&N customers for a number of weeks and shared this with Debbie we were both shocked, disappointed and in disbelief.  This is a direct violation of your employment contract with N&N, a copy of which is attached.  Paragraph 1 (c) provides in part that you have a duty "To devote best efforts exclusively in furtherance of Company's business on a full-time basis, and not to represent any other company without the specific prior written permission of Company."  Further, please refer to Paragraph 8, which prohibits you from soliciting business from any N&N customer on behalf of a competitive business.  Paragraph 9, moreover, prohibits you from working on behalf of a competitive business during your employment at N&N and for two years thereafter.  Your conduct violates all of these restrictions.

These restrictions are fully enforceable, and N&N intends to enforce them.  This means you would be subject to an injunction prohibiting violation of these provisions and potential liability for damages caused to N&N by your breach of contract conduct.  It also appears that you have misled the N&N customers upon whom you have called on behalf of Arvig, causing them to believe they were renewing advertising with N&N.  This action also exposes you to potential civil liability for the damage caused by your conduct.

If you would like to avoid litigation over this matter, N&N expects that you will do the following:

1. First, submit immediately to N&N a list of all N&N customers to whom you have sold advertising for Arvig in any market, along with a copy of the contract the customer signed, the business name, address and phone number.  N&N expects to receive this information by Thursday July 24th 2025 by 5:00pm CST.

1. Second, you must honor your contract with N&N and, effective immediately and continuing for two years as provided in your contract, cease and desist from selling phone book advertising, print or digital, and online digital products for any other publisher within any area covered by N&N and within 25 miles thereof.

1. In addition, you must return all N&N contracts and other documents, the iPad and power cord and other N&N property by Friday July 25th, 2025 5:00pm CST.  You may use N&N's Fed Ex account for this purpose.

N&N regards your violation of your contract as a very serious matter for which it intends to pursue its legal remedies if you do not comply with the requirements in this email. We trust you will proceed in a manner consistent with this information.

We will mail you a letter stating the same information in this email via certified mail.

Thank you for your immediate and serious attention to this matter.

Todd McKnight, President

Names and Numbers



# Exhibit D

Exhibit D

# Wood Law Office LLC

C. Brooks Wood
913-209-3542 mobile
bwood@bwoodlawllc.com

July 24, 2025

Arvig
150 Second Street SW
Perham, MN 56573

Attn: David Schornack
Director of Business Development and Sales
and
and Rich Richter, Sales Manager

                             Via Email only to david.schornack@arvig.com and
                             rich.richter@arvigmedia.com

Dear Mr. Schornack and Mr. Richter:

      In addition to the matters stated in my letter to you of May 22, 2025, N&N has now learned that its employee, Cyd Beck, has been for some time violating her employment agreement with N&N by also selling print advertising for Arvig. This is a direct violation of her contract with N&N, a copy of which is attached. Paragraph 1 (c) provides in part that Ms. Beck has a duty "To devote best efforts exclusively in furtherance of Company's business on a full-time basis, and not to represent any other company without the specific prior written permission of Company." No such permission was requested or given. Further, Paragraph 8 prohibits her from soliciting business from any N&N customer on behalf of a competitive business, which of course Arvig is. Paragraph 9, moreover, prohibits Ms. Beck from working on behalf of a competitive business during her employment at N&N and for two years thereafter. These restrictions are fully enforceable under Kansas law, which is applicable to Ms. Beck's contract and employment at N&N and N&N fully intends to enforce them.

      N&N customers have reported that Ms. Beck, further, has misled N&N customers upon whom she has called on behalf of Arvig, causing them to believe they were renewing advertising with N&N. This conduct constitutes trade libel and unfair competition.

      These facts support an allegation that Arvig has intentionally interfered with the contract between Ms. Beck and N&N. *See Reebles v. Bank of America, N.A.*, 25 P.3d 871 (Kan. App. 2001). It is obvious that Arvig knew that she was a N&N rep and that Arvig would have known that she had an employment contract with N&N. If it claims not to have had such knowledge, it can only be because it purposely avoided asking Ms. Beck if she had such a contract and any restrictive covenants. Given the competitive nature of the phone book advertising business, it is credulous to suggest that Arvig was not on notice that she may have such a contract and restrictions. All N&N reps have employment contracts with restrictive covenants.

Arvig: Messrs. Schornack and Richter
Jul 24, 2025
Page 2

      Ms. Beck has sold an undetermined number of N&N customers the Arvig print directory. She may be continuing to do so at this writing. N&N has suffered damages as a result of her breach of contract activity, and as a result of Arvig's interference in N&N's contract with Ms. Beck. N&N intends to hold Ms. Beck and Arvig responsible for all resulting damages. In Arvig's case, the circumstances with Ms. Beck follow the misleading information Arvig reps have related to N&N customers, as stated in my earlier letter.

      N&N demands that Arvig immediately and permanently cease and desist from allowing any of its sales reps to propound false information about N&N to customers or potential customers, to prohibit Ms. Beck from continuing her employment with Arvig in violation of her contract and to reject any advertising contracts obtained by her from N&N customers. Please acknowledge within three business days that Arvig will conform to the foregoing demands, failing which N&N will resort to its legal remedies.

      Thank you.

Very truly yours,

Wood Law Office LLC

By _/s/ C. Brooks Wood_
   C. Brooks Wood, Owner/Attorney

cc: Mr. Todd McKnight, President Names and Numbers

# Exhibit E

Exhibit E

**From:** Todd McKnight <toddm@namesandnumbers.com>
**Sent:** Wednesday, July 30, 2025 2:40 PM
**To:** cyd.beck@yahoo.com
**Cc:** Todd McKnight <toddm@namesandnumbers.com>; Debbie Brock <dbrock@namesandnumbers.com>
**Subject:** RE: Resignation
**Importance:** High

Cyd,

Thank you for returning the company property and the N&N advertiser contracts you had on hand—we appreciate your cooperation on that matter.

However, we have not yet received:

A list of N&N customers to whom you have sold Arvig contracts (which would be a direct violation of your employment agreement), and

Your written assurance that you will immediately cease all selling activity for Arvig within N&N markets.

We want to resolve this matter without escalating it legally. However, if we do not receive both the customer list and your assurance immediately, N&N will have no choice but to proceed with legal action. We are already retaining an Arizona attorney and will seek an injunction against your continuing violation of the restrictions in your employment agreement as well as monetary damages as permitted under the terms of your employment agreement.

This situation can still be resolved amicably. If you intend to send us the customer list and honor your contractual obligations, please contact me immediately to confirm.

Sincerely,
Todd McKnight, President
Names and Numbers



2