Jeffrey D. Harris (SBN AZ 031136)
Annabel Barraza (SBN AZ 037108)
**STINSON LLP**
1850 N. Central Avenue, Suite 2100
Phoenix, AZ 85004
Telephone: 602.279.1600
jeff.harris@stinson.com
annabel.barraza@stinson.com

*Attorneys for Plaintiff K.W. Brock Directories, Inc.*
  *aka Names and Numbers*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| K.W. Brock Directories, Inc. aka Names and Numbers, a Kansas corporation,<br><br>                Plaintiff,<br>v.<br><br>Cydni Beck aka Cyd Beck and Doe Beck, a married couple; Arvig Enterprises, Inc. dba Arvig Media, a Minnesota corporation,<br><br>                Defendants. | Case No. 3:25-cv-08172-MTL<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S PARTIAL MOTION TO DISMISS** |

Plaintiff K.W. Brock Directories, Inc., ("Plaintiff" or "Names and Numbers") opposes Defendant's Partial Motion to Dismiss (Doc. 27.) Taken as true and construed in the light most favorable to Plaintiff, Plaintiff's allegations in the Complaint state a claim for common law fraud (count eight), racketeering (count nine), and conspiracy (count ten). As such, this Court should deny Arvig's Partial Motion to Dismiss.

I.      **FACTUAL ALLEGATIONS**

For a detailed description of the underlying facts, Plaintiff incorporates by reference the factual background and procedural history set forth in its Motion for a Preliminary Injunction. (Doc. 9), which are equally applicable here. In short, Defendants Cydni Beck and Arvig Media have engaged and continue to engage in an unlawful, national scheme to defraud Names and Numbers' customers and to interfere with the contracts Names and Numbers has with these

customers. Defendants have done this by unlawfully co-opting Names and Numbers' confidential and proprietary information and by making false representations to its current customers, therefore irreparably damaging Names and Numbers' business. Ms. Beck—and, through her, Arvig Media—has also directly defrauded Names and Numbers by intentionally omitting to disclose to Names and Numbers the status of her contracting work on behalf of Arvig Media, a direct competitor to Names and Numbers. By so doing, she received nearly six months' worth of Names and Numbers' Confidential Information (as defined in the Verified Complaint, Doc. 1), including proprietary and sensitive business information such as customer preferences, histories, subscription habits, and pricing data, all of which she then used to benefit and enrich herself and Arvig Media while impoverishing Names and Numbers through the unfair taking of customers and their accounts.

## II.  LEGAL ARGUMENT

In evaluating a motion to dismiss the Court must "accept material allegations in the Complaint as true and construe them in the light most favorable to Plaintiff." *BBK Tobacco & Foods LLP v. Central Coast Agriculture Inc.*, 2021 WL 1751134 at *2 (D. Ariz. 2021) (quoting *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle it to relief." *Id.* (quoting *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1444, 1449 (9th Cir. 2000)).

### A.  Taken as true, Names and Numbers' Complaint states a claim for common-law fraud (Count Eight).

Names and Numbers' allegations for common law fraud are sufficient to survive a motion to dismiss. The allegations need only be "*specific enough* to give defendants notice of the particular misconduct." *MacDougal v. McCarty*, 2014 WL 12694304, at *4 (D. Ariz. Sept. 10, 2014) (emphasis added) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)). Here, Names and Numbers' allegations put Arvig Media on notice of its misconduct. *Blau v. Am.'s Servicing Co.*, 2009 WL 3174823, at *3 (D. Ariz. Sept. 29, 2009) ("[T]here is little doubt that [plaintiff] has stated a claim against [defendant] for purposes of surviving Defendants'

Motion to Dismiss. Plaintiff has alleged that an employee of [defendant] falsely promised to modify her mortgage payment schedule and then promised not to report any late payments made pursuant to this modified plan to the appropriate credit reporting agencies."); *MacDougal v. McCarty*, 2014 WL 12694304, at *4 (D. Ariz. Sept. 10, 2014) (finding allegations sufficient to survive a motion to dismiss where [a]t least some of the allegations focus on purported misrepresentations made by Defendant to Plaintiff . . . .").

Additionally, Arvig Media's argument that Names and Numbers can only sufficiently plead a fraud claim if it alleges the specific time, place, and content of a misrepresentation mischaracterizes Arizona law. (Doc. 27 at 3.) Arizona follows the Restatement (Second) of Torts with regard to common law fraud. *Tavilla v. Cephalon, Inc.*, 870 F.Supp.2d 759, 774 (D. Ariz. 2012). The Restatement permits a claim of fraud by three different means: (1) active misrepresentation, (2) nondisclosure, and (3) fraudulent concealment. *Id.* Fraud by nondisclosure requires that the defendant has been under a duty to disclose material information to the plaintiff, *id.*, which arises in "a fiduciary or other similar relation of trust and confidence," Restatement (Second) of Torts § 551(2)(a) (A.L.I. 1977).

As alleged in the Complaint, Ms. Beck owed a duty to Names and Numbers to fulfill her employment in good faith. Her duty was both contractual and fiduciary. (*See* Compl. at ¶¶ 67, 76). She failed to fulfill this duty when she impliedly represented, through her silence regarding her simultaneous employment with Arvig Media, that she could continue to act in Names and Numbers' best interests. Names and Numbers would never have continued to employ Ms. Beck had it known that Ms. Beck was working for a direct competitor at the same time she was taking Names and Numbers' resources, time, and money (such as payment, insurance, time off, and related benefits). Arizona recognizes this nondisclosure-type as fraud by "mere silence." *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 36 (Ariz. 2002) (quoting *United States v. Colton*, 231 F.3d 890, 899 (4th Cir. 2000)). Therefore, Arvig Media's attempt to frame Names and Numbers' fraud allegation as "Ms. Beck continu[ing] to do her job" entirely misses the point. Ms. Beck owed a duty to disclose information that was material to Names and Numbers—including her direct competition with

Names and Numbers by working with Arvig Media in violation of her employment contract and fiduciary duties. She failed to do so, and under Arizona law, Names and Numbers need not have alleged more.

Further, Arvig Media seems to ignore that the purpose of the particularity requirement of Rule 9(b) is to ensure the defendant "can prepare an adequate answer from the allegations," not to ensure complaints adhere to a set of formulaic criteria. *Odom v. Microsoft Corp.*, 486 F.3d 541, 555 (9th Cir. 2007) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co. Inc.*, 806 F.2d 1393, 1400 (9th Cir. 1986)). The allegations need only be "*specific enough* to give defendants notice of the particular misconduct." *MacDougal v. McCarty*, 2014 WL 12694304, at *4 (D. Ariz. Sept. 10, 2014) (emphasis added) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)). In this case, Names and Numbers alleges that Ms. Beck misrepresented to it that she was fulfilling her employment in good faith. (Compl. at ¶ 114.) At a minimum, she did so impliedly through her silence regarding her simultaneous employment at Arvig Media (which began as early as February 2025) until she was confronted and resigned from Names and Numbers in July 2025. (*See id.* at ¶¶ 25–27, 37.) Her silence and employment at Arvig Media were direct violations of her employment contract with Names and Numbers, which the parties entered in October 2022. *See id.* at ¶¶ 13, 23. Thus, far from the total lack of specificity Arvig Media describes, Names and Numbers has pled more than enough facts to indicate the timing, parties, and substance of Ms. Beck's misconduct such that it can respond to the Complaint.

Looking at the Complaint as a whole, and taking as true and construing the facts in the light most favorable to Plaintiff, Names and Numbers has pleaded enough detailed allegations to survive Arvig Media's motion to dismiss. The Court should therefore deny Arvig Media's request to dismiss Count Eight as it is pleaded with sufficient particularity.

### B. Taken as true, Names and Numbers's Complaint states a claim for racketeering (Count Nine).

Names and Numbers' allegations for racketeering are also sufficient to survive a motion to dismiss. Arvig Media raises two arguments to persuade the Court to dismiss this claim—both

with little analysis or explanation. Neither is enough. To start, the unlawful acts underlying Names and Numbers' racketeering claim do in fact constitute schemes or artifices to defraud. The Arizona Supreme Court has adopted a "broad view" of Arizona's fraud statute because "no other view is sensible." *State v. Haas*, 675 P.2d 673, 684 (Ariz. 1983). The statute does not even require an actual misrepresentation. *State v. Johnson*, 800 P.2d 132, 134 (Ariz. 1994). Omissions, half-truths, ruses, tricks, and other "intentional misleading by hiding or concealing the truth" all fall within the meaning of schemes or artifices to defraud. *Haas*, 675 P.2d at 682. As detailed in the Complaint, Ms. Beck misrepresented her ability to work for Names and Numbers in good faith and, together with Arvig Media, misled Names and Numbers' customers about which entity they were really contracting with. Those actions were part and parcel to Ms. Beck's and Arvig Media's unlawful interference with contract, interference with business expectancy, and unfair competition. So, certainly, a statute "broad enough to cover all of the varieties [of fraud] made possible by boundless human ingenuity" covers acts intended to mislead and confuse such as these. *Id.* at 684.

Again, without providing any support for the assertion, Arvig Media alternatively claims that Names and Numbers has not pleaded its racketeering claim with particularly. The particularity requirement under Rule 9(b) does "'appl[y] to civil RICO fraud claim's brought pursuant to Ariz. Rev. Stat. § 13-2314.04(A)." *Moran v. Higgins*, 2018 WL 11462190, at *4 (D. Ariz. Sept. 7, 2018) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004)). But such a complaint "is sufficient if there is an allegation that the plaintiff has been injured by a violation of § 13-2301(D)(4)(b), the predicate offense, and that the act was done for 'financial gain, and . . . was chargeable and punishable by imprisonment for more than one year.'" *Id.* at *3 (quoting *Hannosh v. Segal*, 328 P.3d 1049, 1053 (Ariz. Ct. App. 2014) (ellipsis in original)). This is precisely what Names and Numbers alleges in Count Nine. (*See* Compl. at ¶¶ 127–33). Accordingly, the Court should deny Arvig Media's request for dismissal as to Count Nine for failure to state a claim.

### C. Taken as true, Names and Numbers' Complaint states a claim for conspiracy (Count Ten).

In Arizona, civil conspiracy is not an independent tort. *Hansen v. Stoll,* 636 P.2d 1236, 1242 (Ariz.Ct.App.1981). "A civil conspiracy requires an underlying tort which the alleged conspirators agreed to commit." *Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Trust of Phoenix, Inc.,* 5 P.3d 249, 259 (Ariz. Ct.App.2000). In short, it is a derivative tort. *Rowland v. Union Hills Country Club,* 757 P.2d 105, 110 (Ariz.Ct.App.1988).

Names and Numbers has pleaded several underlying torts to its claim of conspiracy, (Compl. at ¶ 135), and in doing so incorporated all other paragraphs of the Complaint (Compl. at ¶ 134.) These underlying torts include but are not limited to fraud, racketeering, interference with contract, interference with business expectancy, and unfair competition. (*See id.*) These are sufficient facts to support its conspiracy claim. Arvig Media attempts to argue that this allegation is again premised on an explicit or implicit agreement. (Doc. 27 at 5:7-16.) But that is blatantly incorrect. In part, Names and Numbers bases its conspiracy claim on the executed employment contract between Names and Numbers and Ms. Beck, on the emails between Mr. McKnight and Ms. Beck, and on the emails between Ms. Beck and Names and Numbers customers. These were all documents attached to the Complaint and that the Court can consider in evaluating the motion to dismiss. (Doc. 1-1); *see Pickett v. Century Nat'l. Ins. Co.*, 2020 WL 759058 at *2 (D. Ariz. 2020) (considering exhibits attached to pleadings in denying motion to dismiss "because they are referenced in the Complaint, and neither party doubts their authenticity."). These do more than put Defendants on notice of their misconduct; they are some of the exact evidence that Names and Numbers will be using at trial. *MacDougal v. McCarty*, 2014 WL 12694304, at *4 (D. Ariz. Sept. 10, 2014). Similarly, Names and Numbers makes allegations relating to Arvig Media that also put it sufficiently on notice of the misconduct Names and Numbers' accuses it of. (*See e.g.*, Compl. at ¶¶ 29-30; 36.)

Therefore, Arvig Media's arguments relating to the particularity of the conspiracy claim are unavailing. This is even more true, if the Court takes all facts as true and construes them in the light most favorable to Names and Numbers.

6

### III. CONCLUSION

For the reasons stated above, Names and Numbers requests that this Court deny Arvig Media's Partial Motion to Dismiss, or, in the alternative, grant Names and Numbers leave to amend its Complaint.

RESPECTFULLY SUBMITTED this 20th day of October, 2025.

**STINSON LLP**

By: s/ *Jeffrey D. Harris*
Jeffrey D. Harris
Annabel Barraza
1850 N. Central Avenue, Suite 2100
Phoenix, AZ 85004
*Attorneys for Plaintiff K.W. Brock Directories, Inc. aka Names and Numbers*