**FFOX LAW LLC**
80 E PALOMINO DR
TEMPE, AZ 85284
TELEPHONE 602.908.1707
Frank M. Fox, SBA 010235
Email: fmetzfox@ffoxlaw.com

*Attorneys for Defendant Cydni Beck*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| K.W. Brock Directories, Inc., aka Names and Numbers, a Kansas corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Cydni Beck, aka Cyd Beck and Doe Beck, a married couple; Arvig Enterprises, Inc., dba Arvig Media, a Minnesota corporation,<br><br>Defendants. | Case No.: 3:25-cv-08172-MTL<br><br>**DEFENDANT CYNDI BECK'S MOTION TO RECONSIDER AND IN THE ALTERNATIVE AN EXPEDITED TRIAL** |

## I.     INTRODUCTION

This motion arises from a proceeding that trampled the most basic requirements of due process: Ms. Beck received no fair notice of the hearing and was thus denied any meaningful opportunity to be heard, and her counsel—incapacitated by a documented illness—was unable to provide competent representation, yet the Court proceeded regardless, entering orders at the October 23, 2025, hearing. Federal and Arizona due process principles require notice reasonably calculated to apprise the party of the action and allow preparation, and they guarantee the right to be heard at a meaningful time and in a meaningful manner; those guarantees were not honored here.

Compounding the prejudice, Plaintiff's showing on the merits relied on inadequate proof and misleading characterizations regarding irreparable harm and the scope of any noncompete—positions that collapse under the evidentiary record distinguishing digital offerings from print, Plaintiff's own exit from print in the relevant markets, and the inability of boilerplate contract language to substitute for evidence.

## II. FEDERAL LAW REQUIRES PROPER NOTICE AND MEANINGFUL OPPORTUNITY TO BE HEARD

### A. Notice Requirements

Arizona law—which applies in federal courts within the District of Arizona, part of the Ninth Circuit—requires that parties receive adequate notice of proceedings that affect their rights. At least twenty days' prior notice of the time and place of the hearing shall be served on all parties in interest.

Proper service of process is essential for the court to obtain jurisdiction over a party; consequently, a judgment is void and subject to direct and collateral attack if the court rendered it without jurisdiction due to improper service. Furthermore, due process protections under both the Arizona and federal constitutions guarantee that parties receive notice reasonably calculated to apprise them of the action and allow them to prepare their opposition.

The failure to give proper notice of pending proceedings violates fundamental due process requirements. These principles are reinforced by federal constitutional standards, which require that litigants be heard "at a meaningful time and in a meaningful manner."

Therefore, both statutory and constitutional law mandate that notice be given for preliminary injunction hearings to ensure fundamental fairness and protect the rights of all parties.

**B.     Due Process Protections Under Arizona and Federal Law**

"The touchstone of due process under both the Arizona and federal constitutions is fundamental fairness." *Backstrand v. Backstrand*, 250 Ariz. 339, 479 P.3d 846 (Ct. App. 2020). Due process protections provided under the Fourteenth Amendment of the United States Constitution and Article 2, Section 4, of the Arizona Constitution guarantee that parties receive notice, reasonably calculated to apprise them of the action, so they can adequately prepare their opposition—*Savord v. Morton*, 235 Ariz. 256, 330 P.3d 1013 (Ct. App. 2014).

At a minimum, due process requires that litigants be heard "at a meaningful time and in a meaningful manner." *Backstrand v. Backstrand*, 250 Ariz. 339, 479 P.3d 846 (Ct. App. 2020). The failure to give proper notice of pending proceedings violates "the most rudimentary demands of due process of law." *Savord v. Morton*, 235 Ariz. 256, 330 P.3d 1013 (Ct. App. 2014).

**C.     Lack of Proper Notice Violated Statutory and Constitutional Requirements**

Ms. Beck was not served or given adequate notice of the hearing, depriving her of the opportunity to prepare her defense. A continuance was denied because Arvig had already had one. Federal courts have consistently held that a judgment is void under USCS Fed. Rules Civ. Proc. R. 60(b)(4) if entered without proper notice or service, as due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and **afford them an opportunity** to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). *See also United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010) (judgment is void if the court acts in a manner inconsistent with due process, such as entering judgment without proper notice).

### D. Attorney Incapacity Compromised Right to Effective Representation

Counsel's illness, with a fever of 102 degrees and a need to be near a restroom, rendered him unable to provide competent representation. The emergency motion filed on the day of the hearing demonstrates counsel's incapacity and, therefore, inability to prepare adequately. While illness alone is not always sufficient to justify relief or continuance, federal courts have considered the specific circumstances of each case, including the impact on the party's ability to prepare or defend their case, and whether denying continuance would result in prejudice or procedural unfairness. Counsel was sick for a week and was not able to prepare. Counsel should have contacted some of the witnesses, but they did not. The attached affidavits establish what was missed due to the lack of opportunity. In *Ungar v. Sarafite*, 376 U.S. 575, the U.S. Supreme Court acknowledged that a "myopic insistence upon expeditiousness" in the face of a justifiable request for delay could render the right to counsel an empty formality.

### E. Federal Law Provides Clear Remedies for These Procedural Violations

Rule 60(b)(4) of the Federal Rules of Civil Procedure allows a court to vacate a judgment if it is void, including when the judgment was entered without proper service or notice, which results in a lack of personal jurisdiction. In the Ninth Circuit, improper service of process is a recognized basis for voiding a judgment under Rule 60(b)(4). For example, in *Mason v. Genisco Technology Corp.*, 960 F.2d 849, the Ninth Circuit held that a judgment was void because the plaintiff failed to properly serve the complaint properly, thereby depriving the court of personal jurisdiction over the defendant. Default: Setting Aside Default Judgment (Federal), *Davis v. Blvd. Nightlife Grp., LLC*, 2021 U.S. App. LEXIS 31527, *SEC v. Ross*, 504 F.3d 1130. Similarly, in *Veeck v. Commodity Enterprises, Inc.*, 487 F.2d 423. The Ninth Circuit found that a default judgment was void for improper service, rendering the court without personal jurisdiction.

DEFENDANT CYNDI BECK'S MOTION TO RECONSIDER AND IN THE ALTERNATIVE AN EXPEDITED TRIAL
- 4 -

### F. Attorney's Illness Combined with Lack of Notice Creates Extraordinary Circumstances

The emergency motion demonstrates that counsel's illness was genuine and prevented adequate representation. When combined with the complete lack of notice to the client, these circumstances clearly justify relief under Arizona's procedural rules governing void judgments and extraordinary circumstances. Ariz. R. Civ. P. 60.

Ms. Beck was denied fundamental due process through the complete absence of notice and the inability to receive competent representation due to counsel's illness. Arizona law mandates that any order entered under these circumstances must be vacated as void—*Ruffino v. Lokosky*, 245 Ariz. 165, 425 P.3d 1108 (Ct. App. 2018). The procedural violations in this case strike at the heart of due process protections that Federal and Arizona law strictly enforce. Justice requires vacating the order and providing Ms. Beck with the meaningful opportunity to be heard, which she was denied.

## III.  MERITS OF THE TEMPORARY INJUNCTION

The Court's suggestion that this is a clear breach case overlooks material contract formation and modification issues and the narrow scope of any cognizable irreparable harm. Under controlling principles, purported modifications or expansions of restrictive covenants require mutual assent and consideration. The record does not show either. Nor has Plaintiff demonstrated irreparable harm on this record, particularly given sworn statements from customers establishing that print and digital advertising are distinct markets and that Plaintiff voluntarily exited print in the relevant Arizona markets. The balance of equities already identified by the Court favors Defendants, and the public interest is served by preserving fair competition and choice—especially given that Plaintiff has ceased offering print options.

## IV. PLAINTIFF IS UNLIKELY TO SUCCEED ON THE MERITS

### A. Contract Modifications and Restrictive Covenants Require Mutual Assent and Consideration; None is Shown Here

Plaintiff's theory depends on enforcing restrictive covenants in a way that sweeps together "print and online" and "digital products," despite Plaintiff's business pivot away from print in Arizona. But any material modification or expansion of a non-compete's scope requires mutual assent and consideration. *See USI Ins. Servs. Nat'l v. Ogden*, 371 F. Supp. 3d 886 (modifications to restrictive covenants require mutual assent and consideration). On this record, there is no evidence that Ms. Beck assented to any post-hire expansion of scope, geography, or duration tied to Plaintiff's shift away from print, nor that she received any new consideration for such changes.

This was no simple term edit to this contract. The recorded meeting with the company's management states, "We (Names and Numbers) know this is not what we hired you to do." Ms. Beck was given a new job with significantly less pay but was not asked to sign a new contract.

When the terms of employment change significantly, such as a new job with substantially less pay and different duties, the original covenant no longer applies unless it is reaffirmed or supported by new consideration. Arizona courts have held that restrictive covenants must be incidental or ancillary to a valid and enforceable contract and that they require sufficient consideration to be enforceable. § 8.02 Restrictive Covenants, Restrictive Covenants (AZ). For example, in *Compass Bank v. Hartley*, 430 F. Supp. 2d 973, the court noted that sufficient consideration exists for restrictive covenants entered into at the inception of employment or during the employment relationship, provided a promise of continued employment supports them. However, if the employment relationship changes substantially, the original covenant is deemed unenforceable unless the employer offers new consideration or the employee expressly reaffirms the agreement. The employment relationship changed substantially here. Ms.

Beck was given a job she had not agreed to do when hired, and her pay was cut by $100,000. The two most significant terms of any employment contract were changed. That is a substantial change.

The covenant is no longer valid. A new contract was necessary to enforce it, and none was drafted or signed. Plaintiff relies on the Employment Contract generally but offers no evidence of a later valid modification supported by consideration.

Plaintiff itself frames its current business in Arizona as largely "digital," while seeking to enforce the non-compete to foreclose Ms. Beck from selling print, the very product Plaintiff stopped offering. That disconnect underscores the lack of mutual assent to any expanded restraint covering Ms. Beck's post-employment sale of print-only advertising when Plaintiff exited print in those markets.

Where employment terms materially change, courts recognize that non-competes may not have been intended to survive those changes absent clear evidence. *See Robert Half Int' 'l Inc. v. Billingham*, 315 F. Supp. 3d 419 (material changes to employment terms without evidence that the restrictive covenant was intended to survive can diminish the likelihood of success). Here, Plaintiff's own submissions show a business-model shift: it "decided to go full digital" in the affected Arizona markets and stopped "putting out a phone book," leaving a print void. Plaintiff offers no evidence that the non-compete was intended to remain enforceable to prevent Ms. Beck from selling print advertising in markets where Plaintiff abandoned print. This materially altered the business—and the risk the covenant purportedly addresses—undercutting if not eliminating Plaintiff's likelihood of success.

### B. The Contract Language Must Be Reasonably Construed in Defendants' Favor as to "Print and Digital"

The Employment Contract's non-compete defines "Competitive Business" to include "publication of print or online local business directories and digital products," tethered to "any area covered by [Names and Numbers'] local business directory (print

and online)." Where Plaintiff ceased printing physical directories in the Arizona markets at issue and markets a "digital book" only, the covenant's geographic and subject-matter predicates are, at a minimum, ambiguous as applied to print-only sales in markets where Plaintiff no longer publishes a print directory. Ambiguities must be construed against the drafter and in favor of the employee. In addition, because the actionlocalaz.com search engine is statewide, the non-compete is unreasonably broad.

The covenant's coverage hinges on "any area covered by [Plaintiff's] local business directory (print and online)." Where Plaintiff no longer publishes a print directory in Page, Lake Havasu City, Payson, Sedona, Prescott, Kingman/Bullhead City and the White Mountain Region, and instead promotes a "digital book," a reasonable construction is that Ms. Beck's print-only sales do not compete with Plaintiff's current Arizona offerings. Emails cited by Plaintiff corroborate that reality: "Names and numbers decided to go full digital and not put out a phone book." On this record, the covenant cannot be stretched to bar Ms. Beck from selling a product that the Plaintiff no longer offers.

Plaintiff must show likely irreparable harm not compensable by money. *Herb Reed* and *Winter* require concrete proof, not presumptions. Plaintiff relies on Ms. Beck's contract clause and generalized assertions, but the record shows calculable lost revenue tied to specific markets and contracts.

The attached affidavits establish that paper and digital products are not the same, whether for advertising or otherwise. Plaintiff's own materials emphasize that 50% of customers consult the printed book; its site features distinct "digital book" content rather than physical directories. Arvig's filing explains Ms. Beck sold print-only placements—services Plaintiff ceased offering in the relevant Arizona markets—confirming no imminent harm to Plaintiff's digital business absent injunction. Where the products and channels differ, purported loss of "print" customers to a competitor's print directory—

DEFENDANT CYNDI BECK'S MOTION TO RECONSIDER AND IN THE ALTERNATIVE AN EXPEDITED TRIAL

after Plaintiff exited print—does not establish irreparable harm to Plaintiff's digital offerings.

### C. May Suffer Irreparable Damage is not Sufficient

The Plaintiff on a contract term stating that "in the event of a breach or threatened breach of any provision of this Agreement, the Company may suffer irreparable damages and its remedy at law will be inadequate." That clause cannot establish irreparable harm or justify a preliminary injunction without competent evidence. Federal courts applying the preliminary-injunction standard require an evidentiary showing of irreparable harm; contractual boilerplate is, at most, marginally persuasive and never dispositive.

Federal courts apply federal, not state, standards in granting preliminary injunctions, including in Arizona federal courts, and require the movant to prove irreparable harm with evidence. The federal standard dictates both the requirement to show irreparable harm and the manner of proof, regardless of whether the underlying claim sounds in state law. Courts demand concrete, independent evidence of likely irreparable injury that is not remediable by money damages or other legal remedies; conclusory or speculative assertions are insufficient, and a "mere possibility" is not enough.

### D. Contractual Boilerplate Does Not Control Irreparable-Harm Determinations

Courts may give some weight to parties' contractual statements about harm, but such language is insufficient by itself to establish irreparable harm or to warrant injunctive relief. A contract provision declaring money damages inadequate does not control the equitable inquiry into whether a preliminary injunction is appropriate. Thus, the clause here cannot substitute for evidence demonstrating non-compensable harm.

### E. The Clause Is Permissive and Underscores Uncertainty, Not Proof

The provision states the Company "may" suffer irreparable harm, which is permissive, not definitive, language. Such wording concedes uncertainty and falls short of the evidentiary showing federal courts require; it cannot elevate speculation into proof

of likely irreparable injury. Even if drafted more definitively, courts would still require actual evidence of irreparable harm beyond the parties' say-so.

### F. No Presumption of Irreparable Harm; Economic Harms Are Often Adequate at Law

There is no automatic presumption of irreparable harm even with a showing of likelihood of success; the movant must demonstrate a causal nexus and non-compensability. Evidence that damages are calculable with reasonable certainty defeats claims of irreparable harm; courts have denied injunctions where harms were purely economic and remediable by monetary compensation. These principles underscore that any purported presumption embedded in the contract is, at best, rebuttable and, as a matter of federal equitable doctrine, nonbinding.

### G. Application to This Dispute

The Arizona federal court will apply federal injunction standards and require the Company to prove irreparable harm with facts, not rely on contract boilerplate.

The clause's "may" language cannot satisfy the "likely" and "non-compensable" showing required; it reflects uncertainty and does not establish harm that damages cannot be redressed. Even if given some evidentiary weight, the clause cannot control or displace the court's independent equitable analysis.

The accused party is entitled to—and should—introduce evidence demonstrating that any alleged injury is economic, calculable, and compensable, thereby negating irreparable harm and defeating any request for a temporary or preliminary injunction.

The contractual statement that the Company "may suffer irreparable damages" is unenforceable as a presumption of irreparable harm and cannot justify injunctive relief absent proof. Federal law requires a concrete evidentiary showing that harm is likely and not remediable by monetary damage, a burden that cannot be met through permissive or conclusory contractual language.

### H. Plaintiffs DID NOT and Cannot Show Irreparable Harm.

Plaintiff must, but cannot, show likely irreparable harm not compensable by money damages. Plaintiff relies on contract clauses and broad assertions, but the record demonstrates that any alleged losses are calculable and related to distinct markets and contracts.

#### 1. Decreases in Revenue are compensable and do not constitute irreparable harm.

The records show no proof that digital and paper are similar or identical markets; at most, they show some loss of revenue from last year. The loss of revenue only indicates that it is no longer selling paper. That is not proof. Plaintiff "must, but cannot, show likely irreparable harm not compensable by money damages," because "any alleged losses are calculable and related to distinct markets and contracts." The record reflects no imminent, non-monetary injury, such as loss of goodwill or market collapse; instead, Plaintiff points to quantifiable revenue impacts that can be remedied through damages at law, thereby defeating the finding of irreparable harm.

#### 2. The evidence shows that paper and virtual phone book advertising are different products that customers do not treat the same.

Affidavits and Plaintiff's own materials distinguish "digital book" content from physical directories and confirm that Plaintiff "ceased offering print in the disputed Arizona markets," underscoring that paper and digital are different markets and products. The sworn record establishes that Ms. Beck "sold only print placements—services Plaintiff no longer provides in Arizona," demonstrating that advertisers purchasing print placements are not interchangeable with buyers of Plaintiff's virtual directory offerings and do not treat them the same. Because the products and consumer treatment diverge, any claimed loss from Ms. Beck's print sales does not irreparably harm Plaintiff's digital business.

DEFENDANT CYNDI BECK'S MOTION TO RECONSIDER AND IN THE ALTERNATIVE AN EXPEDITED TRIAL

### 3. Any revenue decrease is attributable to the industry shift from paper to virtual books, not to competition by Ms. Beck.

Plaintiff's "business in Arizona now exclusively features digital offerings after voluntarily exiting print," confirming a strategic shift away from paper directories. The record further shows "Plaintiff's own communications and marketing materials distinguish 'digital book' content from physical directories and note that Plaintiff ceased offering print in the disputed Arizona markets," which explains any decline associated with print products as a function of Plaintiff's own market exit and channel migration, not competitive misconduct. Ms. Beck's current role is "print-only" in Arizona—a category Plaintiff abandoned—severing any causal link between her work and Plaintiff's digital revenues. Where the asserted injury flows from Plaintiff's shift to virtual directories and voluntary exit from print, it cannot support irreparable harm attributable to Defendants.

### 4. The covenant not to compete does not reach Ms. Beck's print-only sales because the products are not the same, and Plaintiff exited print.

Plaintiff "attempts to combine 'print and online' and 'digital products,'" yet Plaintiff's business in Arizona now exclusively features digital offerings after voluntarily exiting print," creating ambiguity and overbreadth in any attempt to apply a digital-focused covenant to print-only sales. Ms. Beck "sold only print placements—services Plaintiff no longer provides in Arizona," so her sales do not compete with Plaintiff's digital-only offerings and do not violate the covenant. Even if the covenant were otherwise enforceable, "the noncompete contractual language is ambiguous as applied to Ms. Beck's print-only sales in markets where Plaintiff has exited print; ambiguities must be construed against the drafter and in favor of the employee." The Court should therefore find no breach and no basis for injunctive relief premised on covenant enforcement.

        **5.**      **Plaintiff's claimed harms are quantifiable and tied to distinct markets, defeating extraordinary relief.**

The record shows "the customer base and business model in digital channels remain intact despite Ms. Beck's actions," and any alleged impacts in the print market "are quantifiable and compensable." Because Plaintiff has not demonstrated imminent non-compensable injury, and because the asserted losses are attributable to its own strategic shift and product differences, reconsideration is warranted, and injunctive relief should be denied.

## V.  THE BALANCE OF EQUITIES TIPS IN DEFENDANTS' FAVOR

The Court has already indicated that the balance of equities favors Defendants. Plaintiff's proposed order would bar Arvig from even accepting business from any Plaintiff customer for 24 months, without geographic limitation, effectively insulating Plaintiff from competition and forcing customers to abandon print in favor of digital and by contrast, denying that overbroad relief imposes little hardship on Plaintiff, which chose to stop printing in the affected markets. The equities favor preserving fair competition in the print space that Plaintiff vacated.

## VI.  PUBLIC INTEREST FAVORS DENIAL OF THE REQUESTED INJUNCTION

Courts must consider the public consequences of injunctive relief. Here, an injunction would restrict advertising options and reduce customer choice by foreclosing print directory advertising in markets where Plaintiff no longer offers a print product. The public interest lies in robust, fair competition, truthful marketing, and market choice—not in granting a de facto exclusive to a party that exited the print segment.

### VII. IF THE COURT DENIES THE MOTION TO RECONSIDER, DEFENDANT BECK IS ENTITLED TO AN EXPEDITED TRIAL

In the Ninth Circuit, courts are encouraged to expedite trials when a temporary injunction has a significant economic impact on the enjoined party. This principle is supported by case law and procedural rules that emphasize the importance of avoiding prolonged temporary injunctions that effectively become permanent due to delays in trial proceedings.

#### A.     Avoiding Prolonged Temporary Injunctions

The Ninth Circuit has expressed concern about temporary injunctions approaching "permanency" due to delays in getting to trial. In *Beverage Distributors, Inc. v. Olympia Brewing Co.*, the court stated that temporary injunctions should not become permanent simply because of trial delays and suggested that parties should expedite the case in the district court (*Beverage Distributors, Inc. v. Olympia Brewing Co.*, 395 F.2d 850 (1968). This indicates that courts in the Ninth Circuit recognize the potential harm caused by extended temporary injunctions and encourage measures to ensure the timely resolution of the underlying case.

#### B.     Expediting Trials Under Federal Rules of Civil Procedure Rule 65

Federal Rules of Civil Procedure Rule 65(a)(2) provides courts with the authority to advance the trial on the merits and consolidate it with the hearing for a preliminary injunction. This procedural mechanism allows courts to expedite the resolution of cases involving temporary injunctions, particularly when the injunction has significant economic consequences. Rule 65(a)(2) requires that parties receive clear and unambiguous notice of the court's intent to consolidate the trial with the hearing, ensuring that all parties have a full opportunity to present their cases, *University of Texas v. Camenisch*, 451 U.S. 390 (1981).

### C. Balancing Equities and Economic Impact

The Ninth Circuit has consistently emphasized the importance of balancing equities when determining whether to grant or modify temporary injunctive relief. In *Commure, Inc. v. Canopy Works, Inc.*, the court highlighted the need to weigh the interests of all parties and assess the damage to each. In that case, the court considered the economic impact on the enjoined party, including potential loss of customers and harm to reputation, as part of its analysis of the balance of equities (*Commure, Inc. v. Canopy Works, Inc.*, --- F. Supp. 3d ---- (2025). Similarly, in *Clements v. Alan Ritchey, Inc.*, the court noted that when both parties demonstrate hardship, the district court must use its discretion to determine which way the balance tips (*Clements v. Alan Ritchey, Inc.*, 165 F. Supp. 2d 1068 (2001). These cases illustrate that courts in the Ninth Circuit consider the economic impact of temporary injunctions when deciding whether to expedite proceedings or modify relief.

### D. Preserving Status Quo and Preventing Irreparable Harm

Temporary injunctions are designed to preserve the status quo and protect parties from irreparable harm during the pendency of litigation. In *Burton v. Matanuska Valley Lines, Inc.*, the Ninth Circuit explained that interlocutory injunctions serve to prevent irreparable loss and ensure the effectiveness of final judgments. The court acknowledged that time is often required to resolve complex legal and factual issues, but emphasized the importance of protecting parties from harm during this period (*Burton v. Matanuska Valley Lines, Inc.*, 17 Alaska 298 (1957). This principle supports the need for courts to act promptly when a temporary injunction imposes significant economic burdens on the enjoined party.

In summary, the Ninth Circuit recognizes the importance of expediting trials when temporary injunctions have a substantial economic impact on the enjoined party. Courts are encouraged to avoid prolonged injunctions, utilize procedural mechanisms under

Rule 65 to advance trials, and carefully balance the equities to ensure that the interests of all parties are reasonably considered.

## VIII. CONCLUSION

Reconsideration is necessary to restore fundamental fairness. Ms. Beck lacked fair notice; her lawyer was too sick to prepare or participate meaningfully; and Plaintiff's proof was both insufficient and misleading on core elements, including irreparable harm and scope of competition. Federal and Arizona law do not permit orders entered in the absence of proper notice and a meaningful opportunity to be heard, particularly where the evidentiary record fails to establish the extraordinary prerequisites for injunctive relief. The Court should grant reconsideration and vacate or materially narrow the prior orders entered on October 23, 2025, so that Ms. Beck may be heard on a complete and accurate record.

Respectfully submitted this 14th day of November 2025.

FFOX LAW LLC

/s/ Frank Fox
Frank M. Fox
80 E Palomino Dr.
Tempe, AZ 85284
fmetzfox@ffoxlaw.com
Attorneys for Defendant Cydni Beck

E-FILED this 14th day of November, 2025, with the United States District Court For the District of Arizona

EMAILED this 14th day of November, 2025, to:

Jeremy C Johnson
David Calvin Potts
Jones Skelton & Hochuli PLC
40 N Central Ave., Ste. 2700
Phoenix, AZ 85004
jjohnson@jshfirm.com
dpotts@jshfirm.com

*Attorneys for Defendant Arvig Enterprises, Inc. dba Arvig Media*

Annabel Barraza
Jeffrey Daniel Harris
Stinson LLP - Phoenix, AZ
1850 N Central Ave., Ste. 2100
Phoenix, AZ 85004-4584
annabel.barraza@stinson.com
jeff.harris@stinson.com

*Attorneys for Plaintiff K.W. Brock Directories, Inc., aka Names and Numbers*